WOLSKI, Administratrix, Appellant, vs. THE KNAPP-STOUT &
Co. COMPANY, Respondent.

*March 11 — April 23, 1895.*

**Master and servant: Dangerous employment: Killing of minor servant:
Assumption of risk: Court and jury.**

Plaintiff's intestate, a minor employee of defendant, was killed while
assisting in the skidding of logs. The skidway was at the foot of
a steep hillside, down which the logs were rolled, the employees
catching and straightening them when they began to roll crooked.
The intestate, without any previous experience in this work, had
been engaged in it for about five days when he was run down by
a rolling log and killed. Upon the evidence (tending to show,
among other things, that the work had elements of danger not
obvious to the inexperienced) it is *held* that the questions whether
the deceased was adequately instructed as to the ordinary dan-
gers of the employment, and whether he assumed the risk, were
for the jury.

APPEAL from a judgment of the circuit court for Dunn
county: JOHN K. PARISH, Judge. *Reversed.*

The action is brought by the plaintiff, as administratrix
of the estate of her son, William Simons, to recover dam-
ages for the death of her decedent by accident while in the
employment of the defendant as its servant.

The plaintiff's evidence tends to establish these facts:
The deceased was a minor of the age of eighteen years, large
of his years, being about six feet tall and weighing 180
pounds. He had been to school, and was of fully average
intelligence. He was hired and sent by the defendant to
work in its camps in the lumber woods, as an assistant cook.
There was at the time no vacant place for a cook. So he
was set to work as chain tender, to assist in the skidding of
logs. He was entirely without experience in this work, and
the defendant knew that he was so inexperienced. He
worked at this work about five days. The skidway at which
he was working at the time of his death was at the foot of

a steep hillside, about thirty feet long, and of about twenty feet elevation. It was his business to help the teamster, Wagner, to put the logs upon the skidway at the foot of this hill. To accomplish this the logs were hauled to the top of the hill, and then rolled down the hill to and upon the skidway. To do this successfully it was necessary to make the logs roll straight down the hill. So, sometimes, it became necessary, when the logs began to roll "crooked," to turn or straighten them. In such cases the practice was to catch the log and hold it, or to go in front of it and hold it, so that it should go straight. "The catcher holds one end of it if it starts crooked, so it will go straight." It is a dangerous business, requiring judgment, skill, and experience, especially on such a steep sidehill as this. It was not safe, in such a place, to try to hold or to straighten a log after it had, by rolling, acquired some considerable momentum. The employees were not expected to catch and straighten logs which had acquired any considerable momentum. But the danger of trying to catch and to straighten the rolling logs cannot be fully understood and appreciated by persons inexperienced in that work. The inexperienced are likely to be deceived in judging of the speed and momentum of a rolling log, and of the practicability of stopping it, while experienced men are much less likely to be so deceived. One mode of catching logs which were to be straightened was by what is called a "back cant." This is done with a "cant hook," by a reverse application. One witness said, "It requires experience and practice to handle a cant hook." There is danger in taking a "back cant" upon a rolling log. If the log has acquired considerable momentum, it cannot be stopped by a back cant, and there is danger that the man who tries it will be thrown, before he realizes the danger, over the log, in front of it, and will be run over by it. This danger is not obvious, but is to be learned by experience or by instruction. The defendant did not require or expect

Wolski vs. The Knapp-Stout & Co. Company.

its employees to stop and straighten logs in this way, yet it was frequently done. Deceased was not instructed, and did not understand or appreciate the danger of this mode of trying to stop and straighten the logs. He had heard the foreman tell a man who was trying to take a "back cant" upon a rolling log, "not to do that." At the time of the accident he was at work with the witness Wagner. They had just started a log down the hill. It stopped against a larger log. They turned it over the larger log. Just as they had turned it over the larger log, Wagner, for some purpose, turned away, and did not see what followed. Deceased was at the right, and larger, end of the log. He was in some way carried over and in front of the log, near to its left end. He was run down by the rolling log, caught between it and a stationary log, and was killed. No one saw the accident or knows either its precise cause or manner. It is claimed that the accident is unaccountable, except upon the theory that in order to straighten the log the deceased undertook to hold or to stop it by a back cant, and was thrown over and run down by it.

On the part of the defendant it was claimed, and its evidence tended to corroborate the claim, that the danger was an obvious one, which the deceased should have known and appreciated; that he was instructed of the safe manner of doing the work; and that he assumed the risk of such danger as was attendant upon the employment.

Verdict for the defendant was directed. The appeal is from the judgment entered upon that verdict.

For the appellant there was a brief by *C. T. Bundy,* attorney, and *T. F. Frawley,* of counsel, and oral argument by *Mr. Bundy.*

*V. W. James,* for the respondent.

NEWMAN, J. There were two principal questions involved before the trial court: (1) Was the respondent liable on the

ground that it had not sufficiently explained to an inexperienced employee the ordinary dangers of the employment? And (2) whether the deceased, under the facts disclosed by the testimony, assumed the risk of the ordinary dangers of the service. The testimony seems to show a case very near to the border line on both questions. On which side it falls is not entirely clear. The law which is applicable is so well settled as to have become elementary. The difficulty, if any, is in its proper application to the facts of the particular case. If the danger to which the deceased was exposed in the service in which he was engaged was such an open and obvious danger as that, considering his age, intelligence, experience, judgment, and discretion, he ought, in the exercise of reasonable and ordinary care, to have known and appreciated it, then the law is that he assumed the risk of that danger. On the other hand, if this danger was not open and obvious to a person of his age, intelligence, experience, judgment, and discretion, then he is not held to have assumed the risk, unless he has been sufficiently informed, in some way, of the danger, or has had a reasonable opportunity to learn it by his own experience. And the duty of informing the inexperienced employee of the dangers ordinarily incident to the service is upon the employer. *Jones v. Florence M. Co.* 66 Wis. 268; *Luebke v. Berlin Machine Works*, 88 Wis. 442; *Craven v. Smith*, 89 Wis. 119.

Ordinarily, it is within the function of the jury to apply these principles of the law to the facts shown by the testimony. It is only when the proper application is so clear as to be free from doubt that it becomes a matter of law for the court. *Casey v. C., St. P., M. & O. R. Co., ante*, p. 113. The testimony given on behalf of the appellant certainly tends with considerable force to show that the employment upon which the deceased was engaged had elements of danger such as were not open and obvious to the inexperienced,

but such as, in the absence of instruction, could be learned by experience alone; that it required at least some experience to do the work safely; that the deceased was inexperienced in the work, and was not adequately warned of its dangers. The deceased was a minor. So there is no presumption that he understood and appreciated the danger. And although there is testimony on the part of the respondent tending to show that instruction was given him, it is yet of an inconclusive character and does not clearly establish the fact. So that it cannot be said that the appellant's case was without testimony fairly to establish it, nor that the facts, or the proper inference to be drawn from the facts, were clear and free from doubt. So it seems to the court that the questions whether the deceased was adequately instructed, and assumed the ordinary risks of the employment, are not so clear, upon the testimony, as that they were matters of law for the court, but that they were questions of fact for the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.