NOLAN, Administrator, Appellant, vs. KROENING, Respondent.

*November 8—December 4, 1906.*

*Appeal and error: Assignments of error, when not considered: Conclusiveness of verdict: Animals: Personal injuries: Evidence: Instructions to jury: New trial: Misconduct of jurors.*

1. Error assigned respecting the reception and rejection of evidence, not claimed to relate to findings of the jury questioned, not considered.
2. If there is any credible evidence to support a verdict it cannot be disturbed on appeal.

3. In determining whether there is such credible evidence or not the record should be viewed in the most favorable light it will reasonably bear in support of the verdict, and the conclusion of the trial judge thereon will not be disturbed unless clearly wrong.

4. In such case it is not sufficient that there is room for the trial judge to have reached, or that the supreme court might have reached, a different conclusion.

5. In an action for personal injuries to a traveler on a highway in consequence of his horse becoming unmanageable by being frightened by a dog, under the evidence, stated in the opinion, it was. *held* that a verdict for defendant could not be disturbed in view of the fact that the trial judge, both in submitting the cause to the jury and in deciding a motion to set aside the verdict, deliberately decided it was within reasonable probability. that the, horse was not frightened or made unmanageable by defendant's dog.

6. In such case instructions to the jury, stated in the opinion, are *held* to be free from error.

7. Findings made on a motion for a new trial, that jurors were not guilty of misconduct, must stand unless they appear to be against the clear preponderance of the evidence.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed*.

Action to recover upon two causes of action as hereafter indicated.

The first claim of the plaintiff was that on September 16, 1902, while G. O. Krueger, the deceased, was traveling south on Sixth street in the village of Reedsville, Manitowoc county, Wisconsin, riding in an open buggy accompanied by his wife, he driving a single quiet horse hitched to such buggy, a dog owned by the defendant, of bad disposition and accustomed to pursue, bite, and worry horses driven upon highways, savagely attacked such horse, worried, pursued, and bit it, causing the horse to become frightened and unmanageable and to jump violently to one side and run along the road, the dog following and continuing its attack on the horse, for a distance of some forty rods, whereby said Krueger was violently thrown from the buggy and one of his feet was caught in the foot-rest holding it fast so that he was dragged for the

distance aforesaid, injuring him so that he died; that he was an able-bodied man sixty-seven years of age, having a wife and family, and was capable of earning $600 per year. Compensation for damages to the surviving relatives in the sum of $5,000 was demanded.

The second cause of action was for compensation for damages to the deceased and was based on facts as to the injury to him stated in the first cause of action.

All allegations of the complaint were put in issue by the answer.

Before the commencement of the trial the jury were carefully cautioned against talking about the case with outsiders or with one another pending the submission of the cause to them for a verdict and, generally, as regards their duty as jurors in respect to keeping free from all impressions other than those produced by the evidence and the law given in court.

The evidence was undisputed that on the day alleged in the complaint, while Mr. Krueger was driving his horse on the highway, as alleged in the complaint, the defendant approached him from behind, riding in a cart drawn by a single horse and accompanied by a boy; that his dog was following him; that he passed the deceased and subsequently that the latter passed him, the deceased's horse being in an unmanageable condition, and that he was thrown from his buggy and came to his death substantially as alleged in the complaint. Whether the defendant's dog was instrumental in producing such result and whether Mrs. Krueger negligently contributed thereto by taking hold of one of the lines and pulling the horse to one side, were controverted matters. The evidence showed that Mr. Krueger's horse became unmanageable about the time *Mr. Kroening* passed Krueger and that the latter's horse jumped to the right and into a ditch at a small culvert, at which time he was thrown from his buggy and thereafter dragged as stated in the complaint. The court

submitted the cause to the jury for special verdict with the following result (matters submitted and not answered, or rendered unnecessary on account of questions that were answered, are omitted) :

"1. On September 16, 1902, was the defendant, *Reinhardt Kroening,* the owner and keeper of the dog mentioned in the complaint in this action? *A.* (by the court by consent of counsel). Defendant was the keeper of said dog.

"2. At the time and place of the injury in question, did said dog attack, bite, and frighten, in the public highway, the horse which plaintiff's intestate, Godfried O. Krueger, was then and there driving? *A.* (a) The dog did not attack or frighten the horse. (b) The dog did not bite the horse."

"6. At the time in question, was the horse which said Krueger was driving so untrained, or so vicious or unmanageable in disposition, that it was not a reasonably safe animal to be driven to a buggy by said Krueger on the public highway? *A.* No, not safe.

"7. Did any want of ordinary care on the part of said Krueger or his wife contribute to produce his death? (64 Wis. 323.) *A.* Yes."

After verdict there was a motion to set the same aside because of misconduct on the part of the jury and there were other motions, rulings, and exceptions thereto preserving for review the questions discussed in the opinion. Judgment was rendered on the verdict in favor of the defendant and the plaintiff appealed.

For the appellant there was a brief by *Sedgwick, Sedgwick & Schmidt* and *Healy & Joyce,* and oral argument by *G. G. Sedgwick.*

For the respondent there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash.*

MARSHALL, J. At the threshold of this case stands the finding of the jury that the respondent's dog "did not attack or frighten the horse;" "that the dog did not bite the horse."

If that has support in the evidence it, of course, disposes of the case in respondent's favor, leaving no ground for a new trial unless such ground exists in the instructions of the court or the ruling on the motion to set the verdict aside for misconduct of the jury. Errors are assigned respecting rulings as to the reception and rejection of evidence, but, so far as we can see, as claimed by respondent's counsel, they do not relate to the finding in question, so we will first devote our attention to the question of whether it is contrary to the evidence.

The rule has been too often stated to leave necessity for more than a reference to it, that if there is any credible evidence to support a verdict it cannot be disturbed on appeal; that in determining whether there is such credible evidence or not the record should be viewed in the most favorable light it will reasonably bear in support of such verdict, and that in deference to the conclusion of the trial judge in respect to the matter,—who saw all the witnesses and heard their testimony, and from his superior point of view must be presumed to have had much better opportunity for determining the truth than the appellate court can have,—such conclusion should not be disturbed unless it appears to be clearly wrong. The mere fact that there was room, as appears by the record, for the trial judge to have reached a different conclusion or is room for us to reach one looking alone at the printed pages presented, not regarding the superior opportunities of the trial judge as stated, is not sufficient. *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Maanum v. Madison,* 104 Wis. 272, 80 N. W. 591; *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667. That doctrine is one of the most important guides in the exercise of appellate jurisdiction as to matters of fact. Often the appearance of a witness upon the stand while giving his testimony, the manner of his answering the interrogatories, and other things occurring under the vigilant eye of the trial judge, are legitimately the controlling

elements in regard to whether there are reasonable conflicting inferences arising from the testimony requiring the cause to be submitted to the jury. Therefore reasonable doubts arising from the printed record of a trial when viewed by itself should be solved in favor of the trial court's decision. No other course would accord to such judge the legitimate dignity of his position or could be adopted without serious danger of wrong prevailing over right, because of those persuasive elements legitimately pointing the way to justice in the matter presented to his view but not presentable to an appellate court, being not given their proper weight.

The record before us as to the jury's answer to question number two must be tested by the foregoing. We shall not attempt to quote the evidence in respect to the matter in detail. It will be sufficient in the main, it seems, to state the general effect thereof.

Mrs. Krueger testified substantially in accordance with the allegations of the complaint as to the conduct of the dog; that she and her husband were riding in a buggy drawn by a single horse proceeding south and east on the highway, her husband driving the horse and she sitting on the left-hand side of the seat; that *Kroening* approached from behind them driving a horse drawing a cart in which he was riding; that his horse was going at a very rapid pace; that her husband turned to the left to allow him to pass, which he did; that when he was about twelve feet away, in passing, his dog growled, approached Mr. Krueger's horse on the left side, and bit the horse in the left hind foot above the ankle; that the dog growled low and ran along the side of the horse for some forty rods; that as the horse was bitten he became frightened and jumped and ran to the right and off the side of the road at a culvert into a ditch and thence on for a considerable distance wholly unmanageable; that when he jumped and ran off into the ditch Mr. Krueger tried to hold him and was thrown from the buggy, his foot being caught and held fast therein so that he was dragged and killed, as

stated in the complaint; that the horse ran along the side of
the road in the ditch wholly unmanageable for the distance
before stated and turned into the traveled way at what was
called the "south culvert," when he became more quiet and
proceeded on a short distance and was then stopped; that the
dog followed tearing along on the east or left-hand side of
the horse to the "south culvert;" that soon after the horse be-
came unmanageable *Mr. Kroening,* who was ahead, turned
aside, and that she and her husband and the unmanageable
horse passed by him.

Mrs. William Bratz, who was working in the field just in-
side the fence where the accident happened, saw *Mr. Kroen-
ing* as he approached and passed Mr. Krueger. She said the
dog was behind *Kroening's* cart as he approached Krueger's
rig; that the former drove slowly as he approached but quick-
ened his pace a little as he passed Krueger; that though she
saw the dog she did not observe that he was excited or that
he did anything to Krueger's horse; that she did not see him
spring in any way or bark; that when the horse jumped she
did not see the dog anywhere; that she saw the dog between
*Kroening's* cart wheels, and then she saw him after *Kroen-
ing* passed Krueger between the two buggies; that she last
saw the dog after the horse made the first jump and that some
weeds interfered with her line of sight.

Mr. F. O. Kiehl, a witness called for the plaintiff, said
substantially: I saw the horse shortly before it turned up into
the highway where it slackened its pace. I saw a dog in
the road but could not say it was *Kroening's.* The dog was
on the left side of the rig in the center of the road. I could
not say whether it was *Kroening's* or Frank Rusch's dog.
Afterwards when *Mr. Kroening* came up his dog was with
him, but I could not say it was the same dog I saw in the
road. When I first saw the horse it was running on the side
of the road. It trotted after it turned up into the road at
the "south culvert." I did not see the dog do anything.

The examination of *Mr. Kroening,* taken under sec. 4096,

Stats. 1898, was offered in evidence. It was to this effect: I drove up behind Mr. Krueger on the occasion in question. I had a dark-colored yellow dog following me. As I approached Mr. Krueger he turned out to let me pass by. I did not see the dog after I came up behind Krueger till I passed by the culvert. As I passed by Krueger his horse jumped and I said, "Hold your horse!" After I had gone a short distance ahead of Krueger I heard some one crying and yelling and I looked behind and saw Krueger's horse coming after me and the man was down dragging under the buggy. I did not see the dog. I looked at the horse. I did not hear the dog. If the dog was there it would have struck my eyes. I would not swear there was no dog there. I didn't think of the dog. I did not see it at any time during the occurrence. I paid no attention whether there was any dog there or not. I don't know whether there was a dog following me or not. I know the dog was with me before I approached Mr. Krueger. I didn't see what started the horse.

There was evidence to the effect that after the accident a small scratch was found on the left hind leg of the horse near the ankle from which a little blood had flowed.

Julia Zahn, a witness called by the plaintiff, was with Mrs. Bratz at the time of the occurrence. She saw the horse at the instant Krueger fell out of the buggy and when it ran off into the ditch at the culvert. She did not see the dog or hear it bark.

Abraham Beck, called by respondent, said, in substance: I saw a dog following *Kroening's* rig at the time he passed Mr. Krueger. I was in the field with Mrs. Bratz and Julia Zahn. I saw *Mr. Kroening* pass by Mr. Krueger. The latter's horse got a little high-lifed at that time. He tried to hold his horse. The horse raised up in front and Mrs. Krueger grabbed round with the right arm over the lines. That was just before the horse had to jump off the culvert. I did not see the dog or hear him bark. Some weeds interfered

with seeing. The horse jumped twice, and the second time he jumped he went into the ditch at the culvert. I did not see the dog after *Kroening* passed Krueger. As the horse jumped Mrs. Krueger reached over and got hold of the right-hand line.

Mrs. Beck, a witness called for the defendant, said: I saw the dog in the middle of the road before Krueger fell out of the wagon. I did not see him do anything to the horse, or hear him bark. I just saw him going along with the team in the road. I saw Mrs. Krueger at the time of the occurrence reach over and take one of the lines. That was as the horse jumped at the culvert.

There was evidence tending to prove that on one occasion Mrs. Krueger said she did not know respondent's dog bit the horse, but others said so, and evidence tending to prove that the dog on some occasions had pursued horses driven along the highway.

The foregoing shows sufficiently the general nature of the evidence. There was the direct and positive testimony of Mrs. Krueger that the dog bit the left hind foot of Krueger's horse, causing him to become unmanageable and go off into a ditch at the culvert and ultimately to cause Krueger's death. It was somewhat discredited by evidence that on a previous occasion she said the dog attacked the horse in front instead of by biting one of his hind feet, and further discredited by evidence tending to show that prior to the trial she said she did not know whether the dog bit the horse, but had been told so; and still further discredited by the circumstance that, whereas she said when respondent approached to pass by her husband's rig the former was driving very fast, the evidence generally in the case was to the contrary. All the witnesses on both sides, who testified to seeing the accident and seeing what occurred prior thereto and thereafter till the horse was stopped, and who were in a position where they probably might have seen or heard the dog if he attacked

or pursued the horse, as claimed, testified that they did not see any such thing.

Now it may be that Mrs. Krueger told the truth as to the cause of the horse going to the left and throwing Krueger into the position which produced his death, but in view of the evidence tending to impair her credibility, and the universal testimony of witnesses on both sides who were in a position where they might, within reasonable probability, have seen or heard the dog at some time during the occur- rence, if its conduct was as Mrs. Krueger claimed, that they did not see any such conduct, and in view of the fact that the trial judge, who listened to all the evidence as it came from the mouths of the witnesses, both in submitting the cause to the jury, and in deciding the motion to set aside their finding, deliberately decided it was within reasonable probability that the horse was not frightened or made unmanageable by respondent's dog, we cannot, it seems, consistently with the rules governing such matters, disturb such decision. Whether the finding of the jury be right or wrong as an original matter, by those tests which it is our duty to apply thereto, it must stand as a verity in the case.

Notwithstanding the foregoing it is insisted on behalf of appellant that fatal error was committed in the instruction in respect to the second question. The language complained of can best be understood by reading it as a part of the entire charge in respect to such question, which is as follows:

"That second question reads, 'At the time and place of the injury in question did said dog attack, bite and frighten, in the public highway, the horse which plaintiff's intestate, Godfried O. Krueger, was then and there driving?' Your answer to this question will be divided into two parts. If you find that the dog did bite the horse which Mr. Krueger was driving, then your answer on that branch of the question will read, 'the dog did bite the horse.' If you find the horse was not bitten by the dog, then your answer to that part of the question will read, 'the dog did not bite the horse.' You will have no trouble in filling that out when you come

to look at the form that is given for the answer. The dog did bite the horse—the dog did not bite the horse. That is all there is of that. You will observe that one part of the question relates to the biting only, and the other part of the question relates to the inquiry whether the dog attacked and frightened the horse even if he did not bite it. If you find that the dog did attack the horse either by biting him, or by running out, or barking or growling at him, or chasing him in such manner as to indicate that the dog was trying to bite, injure or worry the horse, and if the horse was thereby frightened, then your answer to that branch of this question should be, the dog did attack and frighten the horse. If you find that the dog did not attack the horse by biting him, nor by running out, or barking or growling at him, or chasing the horse in the attempt to bite or injure or worry the horse, then your answer to that part of the question should be, the dog did not attack nor frighten the horse.

"The word 'frighten' in the sense in which it is used in this question has reference to fright of the horse resulting, if it did result, from an attack upon the horse by the dog in some of the ways that I have explained to you, and not to any fright resulting, if it did result, from the act of the dog in running along the highway without making any effort or attempt to bite, injure, or worry the horse. If the horse took fright merely because the dog ran past, or behind, or alongside, or in front of the horse, without attacking or worrying or biting the horse, or trying to do so, then in the sense intended by this question the horse was not frightened by any act or conduct of the dog to which this branch of the question has reference, and you are then to answer it accordingly in the negative as to that part of the question. The fright about which this question inquires is fright resulting from an attack by the dog—not to fright which was not caused by such attack. If there was no such attack, then there was no fright caused by the dog in the sense meant by this question. While the answer to the question is not in form 'yes' or 'no,' yet the answer will be the equivalent of 'yes' or 'no' when read in connection with the question. It will be either an affirmative or a negative answer in the sense which has been explained to you, and the instruction which has been given to you on the subject of the burden of proof is applicable to this question and to the answer which you may make to it."

It is argued that the words, "If you find that the dog did attack the horse either by biting him, or by running out, or barking or growling at him, or chasing him in such manner as to indicate that the dog was trying to bite, injure or worry the horse, and if the horse was thereby frightened, then your answer to that branch of the question should be, the dog did attack and frighten the horse," suggest that the finding could not be that the dog attacked the horse unless the jury found that it intended to bite and injure or worry the horse. We do not so understand the court's language. Counsel seem to have gathered the idea urged upon our attention by reading such language as if there was a comma after the words "or chasing him," so that those following, viz., "in such manner as to indicate that the dog was trying to bite, injure or worry the horse," would relate to each of the preceding alternatives, while the charge as actually given was not so punctuated, but was so pointed off as to make the words "in such manner as to indicate," etc., refer only to the words "or chasing him," as will be seen by reference to the whole charge as quoted. Therefore the jury must have understood that if the dog either bit the horse or ran out at it, or barked or growled at it, causing it to become frightened, they should answer that the dog did attack and frighten the horse.

It is contended that the language, "it will be either an affirmative or a negative answer in the sense which has been explained to you, and the instruction which has been given to you on the subject of the burden of proof is applicable to this question and to the answer which you may make to it," in connection with the preceding language, "if the horse took fright merely because the dog ran past, or behind, or alongside, or in front of the horse, without attacking, or worrying or biting the horse, or trying to do so, then in the sense intended by this question the horse was not frightened by any act or conduct of the dog," put the burden of proof upon the

plaintiff to prove that the dog not only did attack and frighten the horse, but that it was the intention of the dog so to do at the time. The learned counsel seem to have read the court's language as if the words "trying to do so" were tied to the preceding alternatives, conjunctively instead of, as the fact is, disjunctively. As we read the language complained of, the idea conveyed by it is that if the dog merely ran past, or alongside of, or in front of the horse and neither attacked, nor worried, nor bit it nor tried to do so, then the fright of the horse, within the meaning of the question, was not caused by the dog. To give the language the sense attributed thereto as a basis for the assignment of error it would need to be in this form: If the horse took fright merely because the dog ran past, or behind, or alongside, or in front of the horse, without attacking or worrying or biting the horse and intending to do so, etc.

The foregoing covers all the criticisms of the charge specially made in the brief of appellant's counsel, and after a careful study of it we do not discover any other which the learned counsel may probably have had in mind in presenting the six exceptions to as many portions of the court's language selected therefrom.

The motion for a new trial because of misconduct of jurors. was based on charges that three of them frequented a hotel at intervals during the trial, two of whom boarded at such hotel; that they consorted there with respondent and persons actively interested in his behalf; that they talked about the case with him and such persons, accepted treats of beer and cigars of them, and heard talk about the case by such persons and others. In the whole there was no definite and certain evidence as to the jurors accepting treats as claimed. At best, the evidence was in much conflict on all branches of the charges. The jurors themselves were sworn and examined and severally denied that they accepted any favors by way of treats from respondent, or his friends, during the trial, or

talked with them about the case, or heard them say anything about it, and, generally, denied in detail all charges of misconduct. There was some support for their evidence in that of other witnesses. It does not seem best to extend this opinion to the length that would be required in order to give even a summary of all the evidence taken and considered by the court on this subject. It has been carefully studied both as printed in the case and summarized in the briefs of counsel, and also as appears in the bill of exceptions. In disposing of the matter here the rule must be applied which governs in deciding other assignments of error as to the conclusions of a trial court on matters of fact. The conclusion must stand, unless it appears to be against the clear preponderance of the evidence. That rule should be applied with considerable strictness on a motion of this sort, as has been heretofore suggested in opinions of this court. *Carthaus v. State,* 78 Wis. 560, 47 N. W. 629; *Cupps v. State,* 120 Wis. 504, 529, 97 N. W. 210, 98 N. W. 546. In the last case cited it was said, substantially: Evidence to impeach a verdict by attacking the fairness of a jury, to be effective, should be very clear and satisfactory. The court should not act upon it favorably to impeaching the verdict in the face of an unequivocal denial by the jurors, in the absence of the most clear and satisfactory evidence of the falsity of the denial. After verdict the interests at stake tempting an attack upon some particular juror are so great that all evidence in respect to such matters should be scrutinized with the greatest caution and care before passing judgment vacating such verdict. Applying that rule to the evidence in this case, and according to the trial judge's decision the dignity which it deserves, we are unable to say that the evidence to sustain the charges of misconduct is sufficiently clear and convincing to warrant a reversal of the judgment on that ground.

There are no other questions in the case that require special consideration in this opinion.

*By the Court.*—The judgment is affirmed.