MICKUCZAUSKI, Respondent, vs. HELMHOLZ MITTEN COM-
PANY, Appellant.

*January 9—January 30, 1912.*

*Master and servant: Injury from defective machinery: Abnormal
and unexpected movements: Questions for jury: Contributory
negligence: Evidence: Instructions to jury: Special verdict.*

1. In an action for injuries to plaintiff's hands, caused by the unex-
   pected descent of the heavy beam of a beam-die press machine,
   used for cutting mitten linings, at which he was working, there
   was evidence that, upon pressure being applied to a treadle,
   when the machine was in perfect condition the beam made one
   complete movement down and up and, upon the pressure being
   released, came to a stop above the die to permit the removal of
   linings and the placing of cloth for cutting; that, by reason of
   defects in the machine, linings were at times only partially
   cut and the work of removing them became difficult; and that
   while plaintiff was removing partially cut linings after the
   beam had stopped above the die, it descended without any pres-
   sure upon the treadle and caused the injury complained of.
   There was also evidence that the plaintiff was a man of low
   intelligence and could speak but little English; that he was
   not familiar with machinery and at first objected to working
   at the machine, but finally consented to do so; that he did not
   know the beam would descend without pressure upon the
   treadle; that the instructions given him by defendant's fore-
   man were general in character, confined to ordinary use of the
   machine; that plaintiff was not instructed to use a stick in
   removing the linings, though one was used customarily and
   was safer; that in giving the instructions the foreman placed
   his own hands under the beam; and that no warning of danger
   was given to plaintiff. Several witnesses testified that before
   plaintiff's injury the beam had slipped down many times as the
   result of abnormal and unexpected action, giving various de-
   fects as reasons therefor; that defendant's superintendent
   knew thereof; and that the machinery operated in the same
   way afterwards. *Held,* that the question of contributory neg-
   ligence was one for the jury.

2. The mechanical impossibility of such irregular movements of the
   beam was not in this case such an established or conceded fact
   as to overcome the testimony of numerous witnesses, shown to

be in a position to know and having special knowledge on the subject, that they could and did occur; and it was therefore for the jury to determine the fact. *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, distinguished.

3. Findings of the jury to the effect that prior to plaintiff's injury the machine was liable to get in such condition that while being operated the beam would sometimes come down to the die without any pressure being applied to the treadle; that defendant had knowledge of that fact, and failed to warn the plaintiff of the danger, and was therein guilty of a want of ordinary care which was the proximate cause of the injury; and that plaintiff was not guilty of contributory negligence,—are *held* to be supported by the evidence.

4. A requested instruction giving prominence to alleged tests of the machine when not in actual use and assuming facts as established upon which the testimony was conflicting, was properly refused.

5. The court may properly refuse to submit for special verdict proposed questions which relate to merely evidentiary matters and which, so far as they relate to ultimate issuable facts, are covered by other questions.

6. Thus, it was not error in this case to refuse to submit a question requiring the jury to answer specifically which one of several alleged defects in the machine was the cause of the beam falling down upon the die, where the court properly submitted the ultimate question whether such irregular movement was habitual, *i. e.* whether the machine was liable to get into such condition that while being operated the beam would sometimes come down to the die without pressure being applied to the treadle.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This action was brought to recover for personal injuries. On the 16th day of August, 1909, the plaintiff was injured while working at a machine in the defendant's factory known as a beam-die press, which was used for cutting lining for mittens and gloves. The complaint alleges that the machine was complicated, made up of many parts and cog wheels, and had power imparted to it by means of belts, shafts, and pulleys, and that the power was obtained by friction by means of a friction cone being pressed into and against a shell of a belt

pulley by a clutch collar on the main shaft which was caused to move by pressure transmitted by means of rods and motion joints from a foot treadle along the front of the machine near the floor, and that the power could be released by moving the foot treadle up such a distance as to move back the friction cone from the shell, and that as part of the machine there was a heavy iron beam suspended over a wooden block upon which material out of which linings were to be cut was placed, and upon which dies placed upon the material were forced through it when the beam moved downward upon the material, dies, and block.     The complaint as amended further alleges:

"That on or about the 16th day of August, A. D. 1909, and for a long time prior thereto, said defendant carelessly and negligently maintained said machine in its said factory building in an improper and unsafe condition, in that, among other things, the said machine was permitted to be operated without a stopping device, commonly called a brake, to stop said machine when power was released, and without any device to prevent said machine, and particularly said iron beam, from continuing with its said momentum and the momentum of the said machinery and from coming down whenever in the operation of the said machine it became necessary to stop the said iron beam in its downward course, and in that the said defendant carelessly and negligently permitted the said machine to be operated in its said factory building with a worn, old, loose, and insufficient brake, and with a brake in such defective condition so that the same would not prevent the said iron beam from continuing in its downward course after the said beam had been lowered and raised by means of pressure on the said treadle, and after such pressure had been removed, and permitted the said machine to be operated in such condition on the said 16th day of August, 1909, and for a long time prior thereto, so that the said iron beam would make abnormal and irregular motions, and without any automatic device to throw the said machine out of gear when the beam reached the top of the stroke on its return, and without any device to hold the said beam at the top of its stroke on its return, and without any device to prevent the said iron beam from coming

down whenever the operator thereof was required to have his hands under the said iron beam, and in that the said defendant on August 16, A. D. 1909, and for a long time prior thereto, carelessly and negligently failed to provide for use with the said machine any block or prop to prevent the said iron beam from coming down upon the said wooden block whenever the operator thereof was required to have his hands under the said iron beam; and that the said defendant carelessly and negligently on the 16th day of August, A. D. 1909, and for a long time prior thereto, permitted the said friction cone and the said belts and pulleys and the said clutch collar to be uncovered and unguarded and in such condition that foreign material was likely to become lodged between the said clutch collar and that part of the frame which constituted the boxing for the main shaft, and the said part so described to be in such condition that power would likely be imparted and likely continue to be imparted to the said iron beam after the operator thereof had pressed down the treadle thereon and removed his foot from the said treadle; that the said defendant carelessly and negligently on August 16, 1909, and for a long time prior thereto, permitted the spring attached to the said foot treadle and the said foot treadle to be and become so loose, defective, strained, and out of repair that the same would not operate to remove the power from the said iron beam after the said foot treadle had once been pressed down; and that the said defendant on August 16, A. D. 1909, and for a long time prior thereto, had carelessly and negligently permitted said wooden block and the machinery used to move the same to be and become so loose, defective, and out of repair and so unevenly cut and so worn and chopped up that the same was unfit and improper to be used on the said machine; and that the said defendant carelessly and negligently, on the 16th day of August, A. D. 1909, and for a long time prior thereto, failed and neglected to provide for use in connection with the said machine any proper shelf or other device; and that the said defendant on the 16th day of August, A. D. 1909, carelessly and negligently directed your plaintiff to operate the said machine without warning or instructing your plaintiff as to the proper manner of operating the said machine, and without warning or instructing your plaintiff as to the manner in

which the said machine was operated, and without warning or instructing your plaintiff that the said machine was so devised that the said iron beam would continue to come down if the operator thereof would continue to keep his foot upon the said treadle, and without warning your plaintiff that the said machine was a positive-geared machine and was not equipped with an automatic ungearing device; and that the said defendant on August 16, 1909, carelessly and negligently permitted the said machine to be operated without having the same properly oiled or cleaned.

"That on the 16th day of August, A. D. 1909, the said defendant directed your plaintiff to operate the said machine, and that at such time your plaintiff did not know how to operate the said machine and did not know of the dangers incident to the operation thereof, and that the defendant knew, or ought in the exercise of reasonable care to have known, of such dangers and that your plaintiff did not know of such dangers, and that the defendant directed your plaintiff on such day to cut linings thereon, and that a short time thereafter, while your plaintiff was in the discharge of his duties as such operator, and while he had a portion of his hands under the die, resting on the said block, and while he had all of his said hands under the said iron beam, the said iron beam came down upon the said die and upon your plaintiff's hands, crushing and bruising his hands and cutting off three fingers of his left hand and the thumb of his right hand and otherwise mangling and crushing his said hands; and that the said iron beam was caused to come down upon your said plaintiff's hands and to so injure him by reason of and in consequence of the negligence and carelessness of the defendant hereinbefore alleged, and that such injuries so described were proximately caused by the said negligence and carelessness of the defendant."

The complaint further states that by reason of the injuries received the plaintiff sustained damages in the sum of $20,000.

The answer was substantially a general denial. Motions for nonsuit and directed verdict were made and denied. The court refused to instruct as requested by defendant and to incorporate certain questions in the special verdict.

The jury returned the following verdict:

"(1) Was plaintiff injured on or about August 16, 1909, by having his right thumb and three fingers of the left hand cut off by the beam of a die press coming down on the die? *A.* (by the court). Yes.

"(2) Was the plaintiff so injured by the beam coming down to the die without any pressure being applied to the treadle? *A.* Yes.

"(3) If you answer question 2 'Yes,' then answer this question: Was said machine prior to plaintiff's injury liable to get in a condition in which, when being used, the beam at times would come down to the die without any pressure being applied to the treadle? *A.* Yes.

"(4) If you answer question 3 'Yes,' then answer this question: Did the defendant know that said machine was liable to get in such condition before the plaintiff was injured? *A.* Yes.

"(5) If you answer question No. 4 'No,' then answer this question: Had such machine been so operated for such length of time that the defendant, in the exercise of ordinary care, ought to have known that it was liable to get in said condition before plaintiff was injured? *A.* ——.

"(6) Did the defendant at any time before plaintiff's injury warn plaintiff against the danger to a person using said machine, from the liability of the beam to come down without any pressure being applied to the treadle? *A.* No.

"(7) If you answer questions Nos. 2, 3, and either the fourth or fifth question 'Yes,' then answer this question: Was said defendant guilty of any want of ordinary care in not warning plaintiff against said danger? *A.* Yes.

"(8) If you answer question No. 7 'Yes,' then was such want of ordinary care the proximate cause of plaintiff's injury? *A.* Yes.

"(9) Was the plaintiff guilty of any want of ordinary care which contributed proximately to produce his injury? *A.* No.

"(10) At what sum do you assess plaintiff's damages? *A.* $7,500."

Motion for new trial was denied, and judgment was rendered in favor of the plaintiff upon the verdict, from which this appeal was taken.

*Burdette F. Williams* and *Lawrence A. Olwell,* for the appellant.

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. D. Corrigan* and *W. L. Gold.*

KERWIN, J.   Plaintiff at the time of the injury was at work for the defendant at a beam-die press machine used for cutting mitten linings.   The machine is made up of four iron uprights which are part of the framework of the machine and bolted to the floor, and has a large wooden block under a cross-beam upon which material is placed while being cut, the cutting die being placed under the beam and pressed down upon and through the material.   The cloth is pulled onto the block from a table which stands at the back of the machine and back of where the operator stands.   The cloth is placed for cutting by reaching under the beam and pulling it forward.   The die is of steel, three and one-half inches high, and the beam caused to descend upon it by pressure exerted upon a foot treadle, or treadle board, which is in front of the operator.   The treadle is hung upon a horizontal shaft running across under the machine near the floor and so connected by means of a bell crank, lever, internal expanding brake, collar, clutch, and friction cone at the back of the machine that when the operator presses the treadle down with his foot it releases the internal expanding brake and almost instantaneously engages the friction cone with a shell pulley, which thereupon sets the machine in motion with power supplied from a motor.   While the brake is pressed down the beam moves up and down by means of two rods at each end attached to eccentrics on the main shaft so connected by means of cog-wheels with the power shaft that the beam makes one complete movement down and up with each revolution of the eccentrics.   Upon removal of the pressure which causes the machine to be set in motion, the treadle is instantly drawn upward by the tension of two spiral springs, one near each end of the treadle board, attached to the

board at one end and extending upward to and hooked into the framework of the machine. The purpose of these springs when not overcome by pressure is to disengage the friction cone and instantly throw on the internal expanding brake, with the result that the beam of the machine, when in normal operation, is caused to stand approximately at the point of location when the brake is applied, except when within from one fourth to one half of an inch of the bottom. This beam weighs about 700 pounds. The foregoing operation of the machine has reference to a perfect machine in perfect order as it is intended to operate.

Plaintiff was thirty years of age and was injured by the beam descending upon his hands while engaged in his work in taking linings from under the beam which had been partially cut through by the die,—on one side of the block being cut through and on the other side not.

The evidence tends to prove that plaintiff was a man of less than ordinary intelligence; could speak but very little English; could not read or write in any language; was not familiar with machinery; first objected to working on the machine in question, but finally consented to do so; the foreman showed him in a general way how to operate the machine by placing the die upon the material, pressing the treadle, and removing the material; the foreman placed his own hands under the beam in showing plaintiff how to operate the machine; no warning of danger was given; the unevenness of the block left the linings uncut on one side at times and this made the work more difficult; plaintiff was not instructed to use a stick in removing the linings, though one was used customarily and was safer; he knew little or nothing about the machine or its operation; he handled the die generally in the same manner as when injured and was not instructed to the contrary; he did not know that the beam would descend without pressure upon the treadle; he operated the machine only a short time before the injury, but during that time the beam

did not descend when he took his foot from the treadle until the time of the accident, at which time the beam was standing from one to one and one-sixteenth of an inch above the top of the die, and while he was putting his fingers under the side of the linings to take out the cut parts, the beam descended without any pressure upon the treadle; that he had to press the treadle to raise the beam in order to get his hand out; at the time of the accident, due to the unevenness of the face of the block, there were three or four pairs of lining uncut on the left side of the die; immediately after the accident plaintiff exclaimed, "The iron fell and caught my hands; the machine must be out of order."

Several witnesses testified that the beam had slipped down many times before the plaintiff's injury, as the result of unexpected and abnormal action, and that defendant's superintendent knew it, and that the machine operated in the same irregular and abnormal way after the accident. The witnesses testified that some days the beam slipped down when it was not stopped at the highest point, sometimes slipped down slowly, sometimes fast, without the foot being upon the treadle. One witness testified that he saw it descend several times and informed the superintendent of the fact and finally quit work because of the danger. Defendant's superintendent testified that when the beam was within a quarter of an inch of the die it would come down to the top of the die without pressure upon the treadle. There is evidence that the first man who worked on the machine after the accident ran it a week. The first day it ran all right; the second day the beam came down without pressure upon the treadle.

Various reasons were given by witnesses for the irregular motions of the beam. Some testified that it was caused at times by defect in the brake, at other times by defect in the springs, too much oil on the expanding brake, binding of the clutch pulley to the shaft, looseness of the brake mechanism or mechanism connected with the brake, or because of improper

erection, or obstruction under the lever and block. These causes were given by experts as well as witnesses who operated the machine. Experts also testified to other defects in the mechanism and construction of the machine, operation of it and failure to keep in repair, which would cause the irregular motions of the beam. There is much conflict in the evidence, not only between operators, but experts as well.

The complaint was amended by adding the allegation that the defendant permitted the machine to be operated with a worn, old, loose, and insufficient brake, in such defective condition that the same would not prevent the iron beam from continuing in its downward course after the said beam had been lowered and raised by means of pressure·upon the treadle and after pressure had been removed, so that the iron beam would make abnormal and irregular motions.

It is claimed by appellant that this is the only defect which caused the so-called irregular and abnormal motions, and that there is no evidence to support the allegation. This is untenable on two grounds: (1) there is sufficient evidence to warrant the jury in finding that the insufficiency of the brake might cause such irregular and abnormal motions; and (2) under a fair construction of the pleading as amended, the irregular and abnormal motions were chargeable, under the allegations of the complaint, to all defects alleged, as will be seen by an examination of this part of the amended complaint set out in the statement of the case.

The principal contention is that a nonsuit or directed verdict should have been granted, and it is first argued that the plaintiff was guilty of contributory negligence as a matter of law in failing to observe instructions. That the plaintiff was a person of low intelligence is well supported by the evidence. It appears on the defendant's own testimony that he was rather stupid and could not understand the superintendent's instructions. True, there is evidence that he was warned, but the warning was confined to ordinary use—the placing of the·

die, cutting and removal of the cloth.    There is evidence that
he did not fully, if at all, understand the operation of remov-
ing the cloth when partially cut.    It is also argued that it
does not appear from the plaintiff's evidence whether the beam
was moving or standing still when plaintiff placed his hands
under it.    Counsel is mistaken upon this proposition.    An
examination of the record will show that the evidence is ample
to support the conclusion that the beam was standing still and
some distance above the die immediately before it dropped and
injured plaintiff.    Upon the evidence we think the question
of contributory negligence was for the jury.    *Rahles v. J.
Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350,
119 N. W. 289; *Wolski v. Knapp-Stout & Co. Co.* 90 Wis
178, 63 N. W. 87; *Ruck v. Milwaukee B. Co.* 144 Wis. 404,
129 N. W. 414; *Jones v. Florence M. Co.* 66 Wis. 268, 28
N. W. 207; *Thompson v. Edward P. Allis Co.* 89 Wis. 523,
62 N. W. 527.

It is further insisted by appellant's counsel that there is not
sufficient evidence that the machine was defective or per-
formed abnormal and irregular motions.    Many witnesses
testified that the machine did at times act irregularly and
make abnormal motions, both before and after the injury, and
that this was known to defendant's superintendent.    But it
is said by counsel that the testimony of witnesses respecting
the abnormal movements of the beam will not be permitted to
overcome the conclusive proof of mechanical impossibilities.
This assertion, of course, presupposes conclusive proof of me-
chanical impossibilities.    In the instant case there is no such
proof.    Upon this point counsel relies upon *Samulski v. Me-
nasha P. Co.* 147 Wis. 285, 133 N. W. 142; *Chybowski v.
Bucyrus Co.* 127 Wis. 332, 106 N. W. 833; *Vorbrich v.
Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434, and other
similar cases, and quotes from *Samulski v. Menasha P. Co.,
supra:* "An uncontrovertible found, or conceded fact, or mat-
ter existing beyond all reasonable controversy, manifestly,

can successfully challenge testimony to the contrary from the mouth of a witness, or number of them."

If it were established in the case before us, or a conceded fact, that the machine in question could not have made the irregular and abnormal movements claimed by plaintiff, the authorities cited by appellant would be controlling. But such is not the case. As we have before shown, there is an abundance of evidence to support the finding of the jury that the beam did slip down at times after pressure had been removed from the treadle, and there is also abundance of evidence that it could have so operated. The evidence of numerous witnesses shown to be in position to know and having special knowledge upon the subject cannot be disregarded where there is room, as in this case, for the jury to find that their testimony was true. *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 114 N. W. 841. The question litigated and found by the jury was whether the machine, prior to the injury, was liable to get in such condition that when used the beam at times would come down to the die without any pressure being applied to the treadle. This was clearly a jury question upon the evidence.

Quite a vigorous attack is made by counsel upon the credibility of witnesses, but an examination of the whole evidence convinces us that their credibility was clearly a jury question. The cases relied upon all turn upon the established fact that under the evidence it was a physical impossibility that the thing could have happened· as found by the jury, or that under the evidence the finding rested for its support upon mere guessing or conjecture without any reasonable probability in its favor. But in these cases this court recognizes the rule that "The jury may go upon excursions of discovery for truth within the field of evidence to the uttermost boundaries of reason, not boundaries set by any particular persons, or persons generally, but such as rational men of common sense might set without passing beyond the dividing line between the field

of probabilities into that of mere guessing or conjecture."
*Samulski v. Menasha P. Co., supra.* And in the above case
it is said verdicts must rest upon probabilities, not upon bare
possibilities. The case of *Fleming v. Northern T. P. Mill,
supra,* is quite similar in its facts to the instant case, and we
think is controlling here. In that case the machine was op-
erated, as in this case, by a lever. Six credible witnesses tes-
tified that they had worked at the cutter machine before ap-
pellant was injured, and that occasionally the knife made a
second downward movement with one pressure of the lever.
Some of the witnesses testified that at times the knife would
make more than a second such movement; others testified that
upon the machine so operating some adjustment was made
and it then ran all right; and still others testified that after
making one second downward movement it was liable to run
regularly as before without any readjustment. The same ar-
gument was made there as here, namely, that it was a me-
chanical impossibility that such abnormal movements could
have been made, but the court overruled the contention, and
it was held that ordinarily it is a question for the jury
whether abnormal and dangerous movements of the machine
have occurred with sufficient frequency to constitute notice to
the employer of imperfections in the action. In the case at
bar there is evidence of actual notice to the employer, before
the injury, of the irregular and abnormal motions of the ma-
chine. The evidence in the case at bar is very lengthy and
conflicting and no useful purpose would be served by an ex-
tended discussion of it. It is sufficient to say that we regard
it ample to support the findings of the jury to the effect that
the machine, prior to plaintiff's injury, was liable to get in
such condition that while being operated the beam at times
would come down to the die without any pressure being ap-
plied to the treadle; that defendant had knowledge of such
fact and failed to warn plaintiff against the danger; that de-
fendant was guilty of want of ordinary care in not warning

plaintiff, which was the proximate cause of the injury; and that plaintiff was not guilty of any want of ordinary care which contributed proximately to produce the injury. This case does not come within the rule of *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434, and other cases of that character, where it was held that the mechanism of the machine was such as to render abnormal movements impossible, although there was testimony that the machine made an unexpected movement which it could not have made if properly adjusted and in a proper state of repair, in the face of a clear case that the machine uniformly, before and after the alleged unexpected movement, without anything having been done to change it in any way, ran all right, and there was no discoverable defect in it. The machine in question here, as in the *Fleming Case,* was quite complicated, and in order to work properly required very accurate adjustment of its parts. This appears fully from the testimony of experts, by which it is shown that loose springs, loose treadle, loose set-screws, and lack of other adjustment which the evidence shows at times existed, or even a half turn of one set of nuts, or a blocking of the lever, would cause irregular operation. Moreover, the jury saw the machine and were thereby greatly aided in weighing the testimony of the numerous witnesses and passing upon their credibility.

Error is assigned because the court refused to instruct the jury:

"In respect to question number 2 you are instructed that there is no evidence in this case proving or tending to prove that at any time when an examination of the die-press machine has been made has any defect or want of repair been discovered which might have caused the beam to descend without pressure being applied to the treadle, after the beam had come to a stop by the operator removing his foot from the treadle, but, on the contrary, every examination and every test made of the machine has shown it to be then in such condition that the beam, having come to stop by removal of the operator's

foot from the treadle, would not descend without pressure being again applied to the treadle."

There was no error in refusal to give this instruction. It was too narrow, its purpose being to give too much prominence to alleged tests of the machine when not in actual use. Moreover, it assumed facts as established upon which the testimony is conflicting.

Error is assigned in refusal to submit to the jury defendant's proposed questions 4, 5, and 6. The fourth question in substance inquires whether the defendant's officers knew that on numerous occasions prior to the injury, in the operation of the machine, after the beam had been brought to a full stop at a point from one and one-half to two inches above the die by removal of the foot from the treadle, it started in motion without pressure on the treadle; the fifth question inquired whether the defendant's officers ought to have known; and the sixth, whether the plaintiff received his injury by reason of the beam so coming down. There was no error in refusing to submit these questions, as they confined the jury to matters which were evidentiary, and did not fairly submit the ultimate fact under the evidence. The propositions requested to be submitted, in so far as they related to the ultimate issuable facts in the case, were covered by other questions and answers in the special verdict.

Error is assigned on the refusal to submit the thirteenth question requested by appellant. This is substantially the same as a question submitted in the *Fleming Case,* and by it the jury were asked,

"Was the cause of the beam slipping or falling down upon the die

"(a) A worn, old, loose, insufficient, or defective brake?

"(b) Uncovered and unguarded friction cone, pulleys, or clutch collar?

"(c) Treadle springs that were loose, strained, defective, or out of repair?

"(d) Failure to properly oil or clean machine?"

In the *Fleming Case* the jury did not answer categorically a similar question, but found that some one or more of the causes separately stated in the question caused the knife to come down a second time with one pressure of the lever.

It is true that these different defects ·were set out in the complaint as causes for the irregular and abnormal movements of the machine, but they were in fact evidentiary of the ultimate question which was litigated upon the trial, namely, whether the machine had a habit, or whether the beam occasionally fell.   So we are of opinion that there was no prejudicial error in refusing to submit this question.   We find no prejudicial error in the record.

*By the Court.*—The judgment of the court below is affirmed.