## HELMERICH–PAYNE, Inc., v. DEBUS.

### No. 14165.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 24, 1941.

Rehearing Denied Feb. 28, 1941.

Kilgore & Rogers and Ray Bland, all of Wichita Falls, for appellant.

John Davenport and W. W. Ballard, both of Wichita Falls, for appellee.

BROWN, Justice.

Appellee Debus was plaintiff below and appellant Helmerich-Payne, Inc., was the defendant.

Plaintiff sued the defendant·on the theory that its employees, without his knowledge or consent, in June, 1939, went into his pasture, consisting of 200 acres of grazing land, and tore down several panels of the four strand, wire fence that was built between his land and a pasture lying south of him, operated by a neighbor named Chamberlain, and having left the line fence down, certain of his livestock escaped through the gap and were lost.

Judgment was entered for plaintiff on the verdict for the amount found, and defendant has appealed.

Plaintiff, by his allegations, has brought suit on the theory that, if and when his cattle were allowed to escape through his south fence, they would range into open territory where they could stray as they pleased and be lost, but the undisputed facts disclose that, when his stock go through his south fence, they only go into the pasture operated by his neighbor, Chamberlain, who pastures cattle on the land south of plaintiff's pasture.

On direct examination, the plaintiff tes-

North

4-strand wire fence (dotted line)

West     East

South

The cause being tried to a jury, a special issue verdict was returned, in which the jury found: (1) That defendant's employees failed to replace the south fence of plaintiff's pasture, after they had unloaded the defendant's pipe, (2) that plaintiff had stock in his pasture, (3) that some of plaintiff's stock escaped from the pasture at the time of, or immediately after, defendant took the fence down, (4) that the stock escaped at the place where the fence was taken down, (5) that they would not have escaped if defendant's employees had not taken the fence down, (6) that plaintiff failed to recover all of the stock that escaped, and (7) that the reasonable market value of such stock was $535.

The defendant requested a peremptory instruction in its favor, which the trial court refused to give.

tified that you go out of his pasture at the place where he alleges the fence was torn down into "Chamber's pasture" (meaning Chamberlain's); that he investigated to see whether or not his cattle were in Chamberlain's pasture, that Chamberlain told him, "he drove up two head of cattle, and two mares, and two mules and a jack", and he was asked: "State whether or not they have ever been found." He answered: "No, sir, they've never been found."

In detailing what stock got out of his pasture, plaintiff said: "Three yearlings and a heifer and four head of cattle, whiteface, one muley face," and as to mules and horses: "Two mules and one mare."

It appears from the evidence that plaintiff had had the pasture leased for about one year before his alleged cause of action arose.

When asked, on cross-examination, how many times his neighbors had told him his stock was out of his pasture, before the time he claims they escaped through the torn down place, he said Chamberlain had told him they were in his pasture three or four times.

When asked: "How many times has Charlie Ford come and told you your stuff was up at his house?" the plaintiff answered: "They weren't at his house, they were on the highway." The interrogating continues:

"Q. Charlie Ford never did tell you before this happened that your stuff was out and at his house?" Plaintiff answered: "Charlie Ford didn't tell me, Frank Ford did."

"Q. Haven't you gone to Charlie Ford's house when he had got your stuff back out of the highway before this took place?" Plaintiff answered: "Yes."

The plaintiff testified that, prior to the occasion which brings about the instant suit he and Chamberlain took down a part of this south fence, so that his cattle and Chamberlain's could drift back and forth in the two pastures to get water in Chamberlain's and better grazing in his, but testified that the fence had been put back prior to the time he claims he lost his stock.

Charlie Ford, one of plaintiff's neighbors, and a disinterested witness, testified that he was familiar with the fence around the Debus pasture and that "it was in bad shape" in June, 1939; that Debus's stock had gotten out of the Debus pasture over on the north side and had come down the public road to Ford's place and came into Ford's field; that this had happened three or four or five times before the occasion plaintiff complains about, and that at one time plaintiff's stock stayed in Ford's field about two weeks; that this occurred in April or May, 1939.

Merle Chamberlain, another neighbor and disinterested witness, who operates the pasture south of the plaintiff's pasture, testified that the fence between him and plaintiff is an old fence and "not much good"; that plaintiff's cattle have gotten out of plaintiff's pasture and into witness's on several occasions; that "at odd times they get in there and I run them back in his pasture." This witness testified that his south fence "is bad". He testified that he lost no cattle on the occasion in question.

The plaintiff testified that he talked to defendant's employees, who had charge of the truck, while they were in his pasture; that he found cattle tracks at the place where the fence was torn down and that he hired a man to repair the fence the next day.

In the state of this record, it appears to us that the trial court should have given a peremptory instruction for the defendant.

■ Neither a verdict nor a judgment may stand when supported by slight testimony, the probative force of which is so weak that it only raises a mere surmise or suspicion of the existence of the fact that is sought to be established. Harris v. M.-K.-T. Ry. Co., Tex.Civ.App., 283 S.W. 895; Koenig v. Marti et al., Tex.Civ.App., 103 S.W.2d 1023, and cases cited in both opinions.

■ The testimony of the neighbors, Ford and Chamberlain, who are not shown to be interested witnesses, is strongly corroborated by the plaintiff, and this indisputably proves that plaintiff's stock had theretofore escaped from his pasture on several occasions and that this was done by going through the fences which enclose the pasture.

According to plaintiff's testimony, he found the defendant's truck in his pasture at the time when the fence had been torn down for the truck to pass through his south fence, which separates his land from Chamberlain's, and his cattle, if they had escaped at that time, had gone into Chamberlain's pasture. He could not testify, for obvious reasons, that the tracks he saw at the broken spot were those of the cattle that he never recovered.

He did not build the fence back then, but waited until the next day to do so, neither did he testify that he immediately went over the whole of Chamberlain's pasture to find the stock that had gone through the gap. According to the proof, his stock had gotten into Chamberlain's pasture on several occasions, and he showed no concern for the possibility of their becoming lost.

We do not think that the testimony of Ford and Chamberlain can be disregarded, but we think it establishes the fact that the plaintiff's cattle could have escaped from his pasture as easily through the fences where the defendant's employees had not touched them as through the gap that was made for defendant's truck, either before plaintiff found the gap or after he did so and left it in that condition until the next day. Koenig v. Marti et al., Tex.Civ.App., 103 S.W.2d 1023, writ dismissed, Freudenstein

et al. v. Valley State Bank et al., Tex.Civ.App., 68 S.W.2d 567, writ refused; Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606.

The jury was, by the evidence adduced, left to a mere surmise or forced to take inference upon inference, before they could say that plaintiff's stock were lost because of the gap that was made in the fence by defendant's employees.

The trial court should have set the verdict aside and should have granted a new trial, when he failed to peremptorily instruct the jury for the defendant.

There may not be "an insurmountable obstacle to plaintiff's right of recovery", and we feel it our duty to reverse the judgment of the trial court and to remand the cause.

### On Motion for Rehearing.

We have carefully reviewed appellee's motion for a rehearing and see no reason why we should change our conclusions in this case.

Appellee testified that he went to the gap made in his south fence at a time which was very shortly after the defendant's employees made the gap.

He said that the cattle escaping through that gap would go into Chamberlain's pasture, which joins him on the south. He said that Chamberlain told him he drove up certain livestock belonging to appellee, and appellee described them as: "2 head of cattle, 2 mares, 2 mules and 1 jack." He then testified positively that he never recovered any of these animals. But appellee did not sue for the loss of the jack and only claims that he lost 1 mare.

For the purpose of showing that some of his cattle went from his pasture through the said break in the fence and into Chamberlain's pasture, appellee testified that he saw the animals' tracks; that these were tracks of "mules, horses, colts, cattle and cows."

But appellee did not sue for the loss of any colt, or colts.

Appellee's testimony shows that he did not attempt to locate his stock in Chamberlain's pasture, after he discovered the fence was down and he saw the tracks, and it further shows that he made no effort to mend the fence until the next day.

In the light of his testimony, no jury could possibly say that the stock that were lost were those that went through the gap before appellee went there, or that they were stock that went through the gap after appellee left the place and before he mended the fence the next day.

Furthermore, no jury could say, in the light of the evidence, that the stock that were lost were lost solely because defendant's employees made a gap in the fence that leads from appellee's pasture to Chamberlain's.

The testimony showed that appellee's stock had been getting out of his pasture at other points on his fence line, and it showed that, on the occasion complained about, Chamberlain, into whose pasture appellee says his stock went, lost no stock.

Mr. Justice Leddy, speaking for the Commission of Appeals, in Austin, Com'r, v. Neiman et al., 14 S.W.2d 794, 796, said: "In determining whether there is any evidence to sustain a finding, we must confine ourselves 'within the field of evidence to the utmost bounds of reason which rational men of common sense might know without passing beyond the line between the field of probability and the field of conjecture.' 23 C.J. p. 53, § 1795; Hollenback v. Stone & Webster Eng. Corp., 46 Mont. 559, 129 P. 1058; Lehane v. Butte Elec. Co., 37 Mont. 564, 97 P. 1038; Mickuczauski v. Helmholz Mitten Co., 148 Wis. 153, 134 N.W. 369."

The motion is overruled.