GIANNOPOULOS, Appellant, vs. THE MILWAUKEE ELECTRIC
RAILWAY & TRANSPORT COMPANY, Respondent.

*May 21—June 16, 1943.*

*Arlo McKinnon* of Milwaukee, for the appellant.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

MARTIN, J. The evidence on the part of plaintiff is to the effect that on December 8, 1937, at about 8:30 a. m., plaintiff was waiting for a northbound streetcar on the corner of North Edison and North Water streets in the city of Milwaukee; that there was snow and ice on the ground, the streets were slippery, and it was a cold day. When the streetcar arrived plaintiff walked from the curb out to the front door of the streetcar. The car was a so-called "one-man" type, having only a motorman. There were two front doors. The one nearest the front was the "in" door; next to it was the "out" door. The in-door was operated automatically by the brake lever; the out-door was operated by hand. When the streetcar stopped, the motorman opened only the in-door. Another man, an employee of the defendant company, was also waiting to board the streetcar. This man was immediately in front of plaintiff. When the in-door opened, this man entered the car and stood on the front platform engaged in conversation with the motorman, standing between the motorman and plaintiff.

Plaintiff got on the bottom step of the in-door entrance, at first having both feet on the lower step. Then the man ahead, who had been talking to the motorman, moved farther

into the car, whereupon plaintiff put one foot on the platform in the act of getting inside the car. While plaintiff was in this position the motorman attempted to close the in-door, causing the front step to commence to raise. At the same time the car suddenly moved forward a foot or two, causing plaintiff to lose his balance and fall backward off the streetcar, landing on the top of his head in the street. When plaintiff fell he lay on his back in the street with his feet at the front step of the car, his head lying southeast toward the curb. At the time plaintiff was forty-eight years old and weighed two hundred thirty-five pounds.

The evidence on the part of the defendant is to the effect that the motorman saw plaintiff when plaintiff was half a block away; that he knew by plaintiff's signal that he intended to board the car; that the motorman ran the car slowly to wait for plaintiff to reach the corner where he would board the car; that he brought the car to a stop, opened the front in-door; that plaintiff left the curb at the corner and as he got about three or four feet from the streetcar he fell; that no part of plaintiff's body touched or struck the car when he fell.

The motorman testified that the front in-door step could not be raised when a person was standing with his weight on the step; that the mechanism of the car was such that the brakes were automatically set when the front in-door was open and that if the car was in perfect condition it could not be moved forward while the in-door was open. The motorman testified that the cold weather affected the door-closing mechanism; that the starting and stopping mechanism of the door and step worked all right before and after the accident.

Two traffic policemen testified in plaintiff's behalf that in the course of their duties they frequently had observed streetcars of the type of car in question move from a standing position at the corner into the street intersection for a considerable distance with the front in-door remaining partially open, and the front in-door step being only partially raised; that they saw this occur more frequently in cold weather.

The pleadings and the evidence present a very sharp issue as to where plaintiff was when he fell and what caused him to fall. The plaintiff's evidence as to his having fallen from the streetcar while boarding it was corroborated by five other witnesses.

The defense is, first, that plaintiff slipped and fell while walking from the street curb to the car; and, secondly, that the accident could not have happened in the manner as testified to by plaintiff and his several witnesses. This latter contention is based on the claim that it was mechanically impossible for the motorman to raise the step of the streetcar with a weight of as much as fifty pounds on the step, and that it was mechanically impossible for the streetcar to move forward while the entrance door was open.

At the close of the testimony defendant moved for a directed verdict. After oral argument the court said:

"I am satisfied, gentlemen, that in this case the evidence requires the court to invoke the principle enunciated in the *Chybowski Case,* 127 Wis., and cases in this state since the *Chybowski Case* which have indicated the court's adherence to the principle.

"I feel that the testimony of the motorman that both before and after the incident the mechanism, which was controlled by the braking apparatus and which controlled the operation of the entrance door, worked perfectly, unrebutted and a verity in the record, together with the evidence of the character of the mechanism itself, leaves no issue for determination by the jury. The motion for a directed verdict is accordingly granted."

After further argument by counsel, the court continued as follows:

"Any issue of negligence to be submitted to this jury must be predicated either on a defect in the mechanism of the car or negligence on the part of the motorman. The court has considered very carefully the evidence which has been submitted in this case in the light of the law which governs and which

must be applied to the facts, and we repeat again that we can find no factual issue in the evidence for submission. The motion for a directed verdict is granted."

It must be noted that the court below in directing a verdict for defendant did so on the theory that the motorman's testimony as to the mechanical impossibility of starting the car forward with the front in-door open, together with his testimony that the car worked all right before and after the accident, made the testimony of plaintiff and his several witnesses incredible as a matter of law and hence did not create an issue for the jury.

In *Chybowski v. Bucyrus Co.* 127 Wis. 332, 339, 106 N. W. 833, the court said:

"When the evidence in relation to a contraverted question of fact on the one side accords with what must necessarily have been the case under given undisputed and indisputable circumstances, and the evidence on the other side is opposed thereto, obviously there is no room for conflicting reasonable inferences, consequently no question for solution by a jury."

In that case there was expert testimony as to the construction and operation of the steam hammer in question, and a demonstration of the physical laws that made a second striking of the steam hammer impossible without a corresponding second movement of the control lever. We have no expert testimony in the instant case; just the bare statement of the motorman that the accident could not have happened in the manner testified to by plaintiff, notwithstanding the testimony of five disinterested witnesses, all corroborating plaintiff's testimony.

What is said in *Fleming v. Northern Tissue Paper Mill,* 135 Wis. 157, 170, 114 N. W. 841, is particularly applicable here. There defense contended that the abnormal movement of the paper-cutter knife could not have happened in the man-

ner as testified to by the plaintiff and several of his witnesses. The court said:

"Though the machine was in proper condition, and when operated merely to exhibit its movements, no work being done, it would run regular with absolute certainty, under working conditions it might, within reasonable probabilities, occasionally, because of being affected by dirt or want of oil or by being fouled with dirt and oil forming a sticky substance, or from some other interference, repeat the motion of the knife as claimed. It is not considered that in order to come to such conclusion it is necessary to reach a decision as to there having been any specific defect in the machine, discoverable by inspection, or that there was any defect in the apparatus, strictly speaking. The case was submitted to the jury upon the theory that if there were any inherent infirmity in the apparatus rendering it liable to habitually, so to speak, not necessarily frequently, but occasionally, under working conditions, make the dangerous abnormal movements testified to, that warranted an affirmative answer to the third question. We approve of such submission and hold that the result should not have been disturbed upon the ground of impossibility of the alleged occurrence having happened."

At page 169 the court said:

"Facing the testimony of the numerous witnesses here as to what did in fact occur, not once or twice only, but many times during a period of years, after the most careful consideration thereof and study of the whole situation and with due regard to the decision of the learned circuit judge, the opinion has been reached by the court that the abnormal movements of the machine claimed to have happened may have occurred. The witnesses could not have been mistaken. They testified to the truth or they individually knowingly testified falsely. The machine was obviously of a somewhat complicated character. The most accurate adjustment of many parts of many kinds was required to produce instant and certain operation of the entire combination and bring about, under all conditions of work, the particular result designed and

none other. The jury saw the apparatus. They had all the facilities which the circuit judge had for discovering the truth and were probably quite as capable as he was of determining whether it was possible for the machine to repeat as claimed."

*Mickuczauski v. Helmholz Mitten Co.* 148 Wis. 153, 165, 134 N. W. 369, is quite similar in its facts to the *Fleming Case, supra.* Referring to the *Fleming Case,* the court said:

"The same argument was made there as here, namely, that it was a mechanical impossibility that such abnormal movements could have been made, but the court overruled the contention, and it was held that ordinarily it is a question for the jury whether abnormal and dangerous movements of the machine have occurred with sufficient frequency to constitute notice to the employer of imperfections in the action."

There must be conclusive proof of the mechanical impossibility that the accident in question could have happened as testified to by the plaintiff and his several witnesses to warrant taking the case from the jury. *Mickuczauski v. Helmholz Mitten Co., supra,* p. 163.

The rule is that where reasonable minds could differ on the evidence presented, or on the inferences that could be drawn from that evidence, a jury question exists. *Better Properties, Inc., v. Kocher,* 239 Wis. 294, 298, 1 N. W. (2d) 157. The trial court erred in directing a verdict.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter an order granting a new trial.